## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RLI INSURANCE COMPANY,

    *Plaintiff,*

vs.

PAUL RUSSELL, *et al.*,

    *Defendants.*

Case No. 14-2479-EFM-JPO

### MEMORANDUM AND ORDER

    Defendant Engineered Systems Company ("ESC") performs construction work in Kansas and Missouri. Plaintiff RLI Insurance Company ("RLI") acted as ESC's surety on three separate construction projects. RLI brings this suit against ESC and several of its officers, members, and managers. RLI seeks indemnification for losses it incurred as ESC's surety, and damages for fraud allegedly committed by several ESC representatives. Each Defendant now moves for dismissal of the claims against it for failure to state a claim upon which relief may be granted. Defendant Betty Russell also moves individually for a judgment on the pleadings. For the reasons discussed below, the Court largely denies but grants in small part the Defendants' motions.

# I. Factual and Procedural Background[1]

## A. Indemnification Claims

On three occasions, RLI executed contract bonds as part of ESC's construction contracts. As surety, RLI was liable for any contractual obligations that ESC failed to meet. For that reason, RLI and ESC executed a General Indemnity Agreement ("GIA"). The GIA was signed by ESC, Paul Russell, and Betty Russell. The GIA named all three as indemnitors. They were obligated to indemnify RLI against any liabilities arising from the construction contracts. Paul Russell signed the GIA both as ESC's managing member and in his individual capacity. Betty Russell signed the GIA in her individual capacity.

RLI acted as ESC's surety for three separate construction contracts. ESC contracted with the Missouri Department of Transportation ("MoDOT") for construction at the Three Trails Development project in Kansas City, Missouri. The contract for the Three Trails Project was in the amount of $1,021,782.26. ESC also contracted with Public Works of Kansas City, Missouri for construction along a Trolley Trail. The Trolley Trail contract amount was $756,349.50. And ESC contracted with the City of Lake Quivira, Kansas to provide construction services on a dam retaining wall project. The contract for the Lake Quivira project was in the amount of $389,186.01.

All three of the projects required that ESC provide a contract bond. So RLI executed contract bonds for each project in the full contract amount. RLI has received claims on the bonds for the Three Trails and Trolley Trail Projects. As a result, RLI is incurring costs, expenses, and legal fees in an attempt to resolve the claims. The Lake Quivira Project

---

[1] The following allegations come from the facts set forth in RLI's Amended Complaint (Doc. 14).

culminated in a lawsuit. A subcontractor that worked on the Lake Quivira project, Performance Contracting Incorporated ("PCI"), sued ESC, RLI, and the City of Lake Quivira, Kansas in Kansas District Court for payment for work performed. ESC refused RLI's request for indemnification regarding the suit. Ultimately, RLI settled PCI's claim for $100,761.36 after incurring significant costs.

RLI contends it is entitled to indemnification under the GIA, and seeks a judgment against the ESC, Paul Russell, and Betty Russell for its fees and costs arising from the three construction contracts.

**B. Fraud Allegations**

Paul Russell, Paul Russell Jr., Joshua Allenbrand, and Jane Valentine ("the Fraud Defendants") were officers, members, or managers of ESC. They made false representations to RLI regarding ESC's line of credit and intent to pay its debts. Based on these misrepresentations, RLI refrained from enforcing the GIA, filing an indemnity lawsuit, or demanding collateralization. And the Fraud Defendants breached their fiduciary duty by using contract funds from the projects for improper purposes. They received $100,761.36 as part of the Lake Quivira project to pay for rock, materials, and labor. But the Fraud Defendants diverted those funds for other purposes, such as their own payroll, overhead, and other personal expenses.

In addition, ESC was scheduled to receive a progress payment of $92,650 on November 20, 2014, as part of the Three Trails Project. The payment would reflect the work that had been done on the project by various subcontractors. RLI opposed this payment because ESC was not properly using the progress payments on labor and supplies. But the Fraud Defendants falsely stated that ESC would use the November 20 progress payment for its proper purpose. In reliance on this assurance, RLI consented to the progress payment. Instead, the funds from the progress

payment were diverted to cover salaries and overhead expenses. All told, ESC failed to pay four different subcontractors for services rendered on the Three Trails Project. These unpaid debts have imposed losses of more than $117,037 on RLI as ESC's surety.

RLI seeks damages and further indemnification for the losses it has suffered as a result of the Fraud Defendants' misrepresentations.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[2] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[3] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[4] The Court must accept all of the factual allegations in the complaint as true.[5] But the Court need not afford such a presumption to legal conclusions.[6] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[7]

---

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[4] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[5] *Iqbal*, 556 U.S. at 678-79.

[6] *Id.*

[7] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

### III.     Analysis

**A.  Contractual Indemnification Claims**

RLI seeks enforcement of the GIA against ESC, Paul Russell, and Betty Russell.  ESC and Paul Russell move to dismiss for improper venue, failure to file a compulsory claim, and failure to state a claim upon which relief can be granted.  They also contend that RLI's claim is not ripe because RLI does not yet know the full amount of damages.  Betty Russell moves to dismiss for failure to state a claim upon which relief can be granted and also moves for a judgment on the pleadings.  Incredibly, not one shred of authority is cited in support of these various arguments for dismissal of the contractual indemnification claims.[8]

   *1.  Venue is proper.*

ESC and Paul Russell contend that the contractual indemnification claims against them should be dismissed because venue is improper pursuant to a forum selection clause.  Venue is improper, they claim, because the bond for the Lake Quivira project dictates that venue shall lie exclusively in the District Court of Johnson County, Kansas for "any legal action filed upon this Statutory Bond."

Because RLI's action does not arise from the Lake Quivira bond, the Court denies the motion to dismiss for improper venue.  RLI is seeking to enforce the GIA, which does not

---

[8] Counsel for the defendants is seemingly unaware of D. Kan. Rule 7.6(a)(4), which requires that the argument section of a brief or memorandum refer to "all statutes, rules and authorities relied upon." Doc. 26 is a four page motion in which counsel seeks dismissal under three different legal theories. In Doc. 23, counsel moves for dismissal and a judgment on the pleadings in less than two pages. And in Doc. 25, counsel moves to dismiss yet another count in only two pages. In all three of these motions, counsel fails to cite sufficient authority in support of his various arguments. He does not cite a case from the Tenth Circuit, this Court, or any other federal or state court. It appears that zero research was done on these claims. This sort of legal work (although frankly, it lacks the law and effort required to qualify as "legal work") is simply unacceptable in this Court. By failing to cite any authority, counsel has wasted significant judicial resources, to say nothing of the time and resources of the parties. Because counsel did not feel the need to conduct any research, the Court did so on his behalf to determine the cogency of his various unsupported claims. In the future, it would behoove counsel to support his arguments with applicable law.

contain a forum selection clause. RLI is not suing for breach of the Lake Quivira statutory bond, which is entirely distinct from the GIA. The GIA dictates that ESC and the Russells would indemnify RLI for any losses it incurred in relation to their construction contracts. And the Lake Quivira Project was one of those contracts. But this action does not arise from a breach of the Lake Quivira bond. Rather, RLI is alleging that it incurred losses from all three projects, and that the indemnitors breached their obligations under the GIA. This is not a "legal action filed upon" the Lake Quivira statutory bond. As such, the forum selection clause contained in the Lake Quivira bond is irrelevant.

  *2. RLI was not required to file cross claims in state court actions.*

ESC and Paul Russell also argue that the allegations against them should be dismissed because RLI failed "to plead a compulsory counter or cross claim against ESC" in earlier state court actions. They contend that "pursuant to Fed. R. Civ. P. 13, RLI should have filed a cross claim against ESC" when both parties were sued by PCI in Kansas state court. In addition, ESC and Russell claim that RLI and ESC are both defendants in Missouri cases arising from the Three Trails and Trolley Trail projects. They argue that RLI was required to file cross claims in the Missouri cases as well. The argument seems to be that somehow, RLI is barred from bringing the instant case because it failed to comply with the Federal Rules of Civil Procedure in the various state court actions.

While it should go without saying, the Federal Rules of Civil Procedure do not govern actions in state courts, and are irrelevant to the question of what RLI should have done when sued in Missouri and Kansas.[9]

But more to the point, RLI complied with both the Missouri and Kansas Rules of Civil Procedure in not filing cross claims in the state court actions. In Missouri, cross claims are always permissive, and never compulsory.[10] And under the Missouri rules, a claim against a co-party for indemnity is a permissive cross claim and not a compulsory counterclaim.[11] Cross claims are permissive in Kansas as well, with two exceptions that are not present in this case.[12] So RLI was not required to bring a cross claim against ESC in either of the state court actions. Because neither Missouri nor Kansas required RLI to file cross claims for indemnity against ESC, RLI is not barred from doing so here.

Because both state and federal rules of civil procedure permit RLI to file an independent claim for indemnity, the Court denies ESC and Paul Russell's motion to dismiss under Rule 13.

*3. This matter is ripe.*

Lastly, ESC and Russell take issue with the fact that RLI does not yet know the exact amount of its damages. They contend that the case is not yet ripe because damages are unknown, and move to dismiss because RLI failed "to state with particularity the measure of damages it has allegedly sustained."

---

[9] In any event, under Fed. R. Civ. P. 13 cross claims are always permissive, and never compulsory. So even if the Federal Rules did govern the state court actions, RLI would not have violated Rule 13 by failing to bring permissive cross claims.

[10] *Hemme v. Bharti*, 183 S.W.3d 593, 596 (Mo. 2006) (en banc); *See also* Mo. Sup. Ct. Rule 55.32(f).

[11] *Hemme*, 183 S.W.3d at 598-99.

[12] Kan. Stat. Ann. § 60-213(f)-(g).

In their motion to dismiss, ESC and Paul Russell argue in two sentences that the claims against them are not ripe because RLI does not know the exact amount of its damages. As with all of their arguments, this assertion is not supported by any binding or persuasive authority. "The ripeness doctrine aims to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[13] Generally, courts will find that a case is not ripe for adjudication if "anticipated events and injury are simply too remote and uncertain to justify present adjudication."[14] That is hardly the case here. RLI alleges that ESC and Paul Russell breached an indemnification contract. As a result of that breach, RLI has incurred damages in excess of $374,420.88. This allegation is neither remote nor uncertain. RLI has suffered a real injury, and that injury will only be worsened if RLI is unable to enforce the GIA. This case is certainly ripe for adjudication.

The argument that RLI failed to state a claim because it did not give an exact amount of damages is also misplaced. Nowhere in Rule 8 is a plaintiff required to plead an exact amount of damages. And, once again, the Defendants do not point to any authority supporting such a claim. In reality, plaintiffs regularly allege imprecise amounts in their demands for relief. For example, in diversity cases a plaintiff is only required to allege damages in an amount greater than $75,000.[15] Ultimately, the determination of damages is a question for the jury; the amount

---

[13] *Tarrant Reg'l Water Dist. v. Hearrmann*, 656 F.3d 1222, 1249 (10th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)) (internal quotation marks omitted).

[14] 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.2, 459 (3d ed. 2004).

[15] *McPhail v. Deer & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) ("[A]ll the plaintiff needs to do is allege an amount in excess of $75,000 and he will get his way.").

alleged in the complaint is simply a good-faith estimate.[16] There is no support for the contention that RLI fails to state a claim simply because it did not demand a specific amount of damages. In its claims against ESC and Paul Russell, RLI seeks damages in excess of $374,420.88. RLI's demand for relief satisfies Rule 8.

### 4. Betty Russell's Contractual Indemnification Claim

Betty Russell also moves to dismiss the contractual indemnification claim against her. She argues that RLI fails to state a claim upon which relief may be granted because her signature is not acknowledged or notarized as required on the GIA. So she contends that RLI cannot enforce the GIA against her and therefore fails to state a claim for contractual indemnification. She does not support this assertion with any legal authority.

Here, RLI states a plausible claim that Betty Russell was bound by the GIA. No Kansas statute requires that this agreement be notarized. The parties simply included this requirement in the agreement. Ultimately, whether an enforceable contract exists turns on the intent of the parties and is a question of fact for the jury.[17] And "[i]n order to form a binding contract, there must be a meeting of the minds on all *essential* elements of the contract."[18] While Betty Russell's signature on the last page of the GIA is not notarized, her printed name and signature are affixed to the preceding page. Next to her signature is that of another witness attesting that Betty Russell executed the GIA. A jury could plausibly determine that Betty Russell intended to

---

[16] *See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 WL 5311540, at *3 (D. Kan. Sept. 11, 2015) (citing *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012)) ("[T]he amount in controversy is not the amount the plaintiff will recover, but rather an estimate of the amount that will be put at issue.") (internal quotations marks omitted).

[17] *Unified Sch. Dist. No. 446, Indep., Kan. v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542, 546 (2012).

[18] *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.22 1194, 1198 (1991) (emphasis added) (citing *Sidwell Oil & Gas Co. v. Loyd*, 203 Kan. 77, 79, 630 P.2d 1107, 1110 (1981)).

be bound by the GIA, despite the fact that her signature was not notarized on the last page. Accordingly, her motion to dismiss for failure to state a claim is denied.

Relying on the un-notarized signature, Betty Russell also moves for a judgment on the pleadings pursuant to Rule 12(c).  Under Rule 12(c), a defendant may move for a judgment on the pleadings after the pleadings are closed.  A "defendant may not move under Rule 12(c) prior to filing an answer."[19]  And Betty Russell has not filed an answer and this case.  Accordingly, her motion for a judgment on the pleadings is denied because pleadings are not yet closed.

**B.  Noncontractual Indemnification**

ESC, Paul Russell, and Betty Russell next move to dismiss RLI's claim against them for noncontractual indemnification.  They contend that RLI fails to state a claim upon which relief may be granted because RLI fails to adequately allege the acts and omissions that gave rise to the need for indemnification. The arguments advanced in this motion are not supported by any legal authority.

Although RLI uses the phrase "noncontractual indemnification," this claim is really based on a theory of implied contract.[20]  Under Kansas law, RLI cannot recover on claims of both implied and express contract when the same conduct constitutes the alleged breach.[21] Nevertheless, the Federal Rules of Civil Procedure allow RLI to allege breaches of express and

---

[19] 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, 213-14 (3d 3d. 2004).

[20] *St. Francis Reg'l Med. Ctr., Inc. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1426 n.16 (D. Kan. 1997). ("[Implied Indemnity] is nothing more than an implied contract.").

[21] *See Emanuel Home v. Bergin*, 127 Kan. 593, 274 P. 284, 285 (1929) ("[O]ne cannot recover on an implied contract . . . when it is shown an express contract is outstanding covering the same subject.").

implied contract in the alternative.[22] RLI adequately states a claim for breach of implied contract in the event that a jury determines the GIA is unenforceable.[23]

In Kansas, "an action for implied contractual indemnity arises when one party without fault is compelled to pay for the tortious acts of another."[24] Here, RLI alleges that ESC failed to make required payments arising from three separate construction contracts. As a result of these missed payments, RLI has incurred costs as ESC's surety. RLI has been sued in both Missouri and Kansas state court, and RLI settled one of those lawsuits for $100,761.36. RLI has sufficiently alleged that it was without fault, and was compelled to pay as a result of ESC's wrongdoing. Therefore, it has sufficiently stated a claim of implied indemnity against ESC. While RLI may not recover on both its express and implied claims for indemnity against ESC, it may plead both in the alternative.

While RLI can maintain an action for noncontractual indemnification against ESC, it may not do so against Paul or Betty Russell. As stated above, an action for implied indemnification arises "when one party without fault is compelled to pay for the tortious acts of another."[25] And RLI fails to allege that Paul or Betty Russell, individually, were responsible for any of the costs for which it seeks to be indemnified. RLI alleges that it executed contract bonds for all three of ESC's construction contracts. Never, with regards to the individual construction projects, are

---

[22] Fed. R. Civ. P. 8(d)(2); *see, e.g., Clark v. Green Tree Servicing, LLC*, 69 F. Supp. 3d 1203, 1222 (D. Colo. 2014) ("[Plaintiff] may plead a breach of contract claim and a promissory estoppel claim based on the same conduct or document in the alternative, although she may not ultimately prevail on both claims.").

[23] *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1092 (D. Colo. 2013) (allowing a plaintiff to bring a claim for promissory estoppel in the event that the jury failed to enforce a related express agreement).

[24] *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1269 (D. Kan. 2002) (quoting *Bick v. Peat Marwick & Main*, 14 Kan. App. 2d 699, 708, 799 P.2d 94, 102 (1990)) (internal quotations marks omitted).

[25] *Bick*, 14 Kan. App. At 708, 799 P.2d at 102.

Paul or Betty Russell mentioned. The complaint alleges only that ESC, and not Paul or Betty Russell, was involved in the construction contracts. Therefore, only ESC could be responsible for the claims that have been made on the bonds. RLI may seek to enforce the GIA against Paul and Betty Russell because that express contract bears their signatures. But for an implied indemnity contract to arise, the individuals would have to have caused the losses that RLI incurred. And RLI fails to make such an allegation. Accordingly, RLI may plead an action for implied indemnity in the alternative against ESC alone.

For the reasons stated above, the Court dismisses RLI's claim for implied indemnity against Paul and Betty Russell.

## C. Fraud Claims

Paul Russell, Paul Russell Jr., Joshua Allenbard, and Jane Valentine ("the Fraud Defendants") move for dismissal of the fraud claim against them. They argue that RLI fails to state with particularity the circumstances constituting as required by Rule 9. They also move to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

*1. RLI fails to plead fraud with sufficient particularity.*

Under Rule 9(b)'s heightened pleading requirements, a plaintiff must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[26] Although the plaintiff must identify the circumstances constituting the fraud, the Rule does not require particularity with regards to the

---

[26] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

defendant's intent, knowledge, or state of mind.[27] In sum, a plaintiff must "set forth the 'who, what, when, where, and how' of the alleged fraud."[28]

The Fraud Defendants argue that RLI fails to satisfy the "who" prong of Rule 9(b) because it does not identify which of the four individuals actually made false representations. The Court agrees. "Rule 9 must be read to prevent plaintiffs from lumping defendants together in making accusations of fraud."[29] When alleging fraud against a group of defendants, a plaintiff "must identify the specific individuals who made the alleged misrepresentations."[30]

There is an exception to this principle when a group of defendants is responsible for a single document or statement that contains fraudulent misrepresentations.[31] But RLI makes no such allegation in its complaint. The complaint does not indicate whether the misrepresentations were made in person, over the phone, or via emails or letters. RLI only alleges that the Fraud Defendants made the various fraudulent misrepresentations. Never does RLI point to a specific misrepresentation made by a specific individual. It is hard to imagine that every single occasion of alleged fraud was committed in unison by Paul Russell, Paul Russell Jr., Joshua Allenbard, and Jane Valentine. By failing to identify which individuals made specific fraudulent statements, RLI fails to comply with Rule 9(b).

---

[27] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

[28] *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

[29] *Bolden v. Culture Farms, Inc.*, 1989 WL 160469, at *2 (D. Kan. Nov. 21, 1989).

[30] *Thompson v. Jiffy Lube Intern., Inc.*, 505 F. Supp. 2d 907, 933 (D. Kan. 2007) (quoting *Gottstein v. Nat'l Ass'n for Self Employed*, 53 F. Supp. 2d. 1212, 1218 (D. Kan 1999)) (internal quotation marks omitted).

[31] *Bolden*, 1989 WL 160469, at *3.

The Fraud Defendants also claim that RLI fails to satisfy the "when" prong by only giving the date for one of the many allegations of fraudulent conduct. The purpose of Rule 9(b) is to give a defendant fair notice of the plaintiff's claims and the factual grounds upon which they are based.[32] And "Rule 9(b) must be read in conjunction with the principles of Rule 8," which calls for a short and plain statement of the claim for relief.[33] RLI's allegation of fraud arising from Three Trails Porject progress payment satisfies that "when" prong of Rule 9(b). With this allegation, RLI alleges that ESC received the progress payment on or about November 20, 2014, and made false representations regarding the payment around that time. While this allegation lacks particularity with regards to who committed the fraud, the Fraud Defendants are put on sufficient notice as to when the fraud occurred.

But RLI's other allegations of fraud fail to satisfy the "when" prong of Rule 9(b). RLI's first allegation is that the Fraud Defendants made false representations to RLI about ESC's credit and their intent to repay their debts. This bare allegation is deficient under Rule 9. RLI fails to state a date, or general time range, as to when the Fraud Defendants made these false representations. RLI's other fraud allegations also fall short of Rule 9's requirements. RLI generally alleges fraudulent conduct arising from each of the three projects. But RLI does not identify even a broad period of time when the fraud could have occurred. The complaint notes that all of the projects began in 2013, but no more other dates are given. RLI does not allege that the fraud occurred in a given month, or even a given year. And so the Fraud Defendants are only put on notice that the alleged fraud occurred between February 2013, when the first project

---

[32] *Koch*, 203 F.3d at 1236.

[33] *Schwartz*, 124 F.3d at 1252.

began, and March 2015, when the first amended complaint was filed. That time frame is not specific enough.[34]

RLI does not state the circumstances of fraud with particularity as required by Rule 9(b). Recognizing the possibility that RLI can cure these defects by adding more particular details to its complaint, the Court grants RLI leave to amend its pleadings and denies the Fraud Defendants' motion to dismiss. But the Fraud Defendants may renew their motion upon a failure to timely or adequately amend the pleadings.

*2. Defendants' other arguments for dismissal of the fraud claims are without merit.*

The Fraud Defendants advance two additional arguments for dismissal of the claims against them. They are both without merit and do not warrant dismissal under Rule 12(b)(6). First, they contend that they are shielded from liability pursuant to Kan. Stat. Ann. § 17-7688. Second, they argue that the fraud claims should be dismissed because it is actually a claim for breach of contract.

The Fraud Defendants do not elaborate on their blanket assessment that § 17-7688 shields them from liability. Nor do they cite any authority illustrating the applicability of that statute to these particular facts. In fact, § 17-7688 does not shield the Fraud Defendants from personal liability if they committed fraud. In Kansas, a member or manager of a limited liability company generally cannot be held personally liable for the company's torts. But it is well established that an individual is personally liable for corporate wrongs if he willfully participated in acts of fraud

---

[34] *See, e.g.*, *P.R. v. Zavaras*, 49 F. App'x 836, 840 (10th Cir. 2002) (finding insufficient an allegation of fraud occurring from 1995 until 2000); *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007) (finding insufficient an allegation of fraud occurring over a 12 to 18 month period); *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1204 (D. Kan. 2001) (finding insufficient an allegation of fraud occurring over a period of less than two years).

or deceit.[35] And "[t]his liability does not depend upon piercing the corporate veil or upon the application of any alter ego theory."[36] If RLI adequately amends it pleading, a fraud claim will not be barred by § 17-7688.

Equally fruitless is the Fraud Defendants' assertion that RLI's fraud claim is actually a breach of contract action. They rely on *Wade v. EMCASCO Ins. Co.* in arguing that RLI's fraud claims should be dismissed because the allegedly fraudulent conduct is no different from the conduct on which it alleges a breach of contract.[37] *Wade* dictates that the basis of a fraud claim "must be different from the conduct upon which a breach of contract claim is based."[38] But in *Wade*, the plaintiff brought claims of both breach of contract and fraud against *the same party* and *for the same conduct*.[39] The Court noted that two claims were "indistinguishable" and held that the plaintiff had failed to establish an independent claim for the tort of fraud.[40] The facts in *Wade* are distinct from the instant case.

Unlike the plaintiff in *Wade*, RLI is not alleging that the Fraud Defendants committed both breach of contract and fraud with the same conduct. Only one of the Fraud Defendants, Paul Russell, is facing both contract and fraud claims. And the conduct underlying the fraud claim is distinguishable from the contract action against Paul Russell. In the claim under the GIA, RLI asserts that Paul Russell breached his contractual duty as indemnitor. In the fraud

---

[35] *Monarch Transp., LLC v. FKMT, LLC*, 2012 WL 3629861, at * 12, 283 P.3d 249 (Kan. App. 2012); *State ex rel. Stephan v. Commemorative Servs. Corp.*, 16 Kan. App. 2d 389, 400, 823 P.2d 831, 840 (1991).

[36] *Commemorative Servs. Corp.* 16 Kan. App. 2d. at 400, 823 P.2d at 840.

[37] 483 F.3d 657 (10th Cir. 2007) (applying Kansas law).

[38] *Id.* at 675.

[39] *Id.* at 675-76.

[40] *Id.*

claim, RLI alleges that the Fraud Defendants breached their fiduciary duties and made false representations with regards to its funds. And the conduct that RLI is alleging is properly brought as a tort, and not as a breach of contract claim. In the fraud claim, RLI alleges a breach of duties imposed by law, not by contract. In such cases, a tort claim, and not a breach of contract claim, is proper.[41]

If RLI is able to plead fraud with sufficient particularity, the claim will not be barred by either Kan. Stat. Ann. § 17-7688 or the argument that it is actually an action for breach of contract.

### D. Summary

For the reasons stated above, the Court largely denies but grants in small part the Defendants' motions. Specifically, the Court grants Paul and Betty Russell's motions to dismiss the implied indemnification claims against them. Additionally, the Court finds that RLI failed to plead the circumstances of fraud with sufficient particularity, and grants RLI leave to amend its fraud claim. The Court denies the rest of the Defendants' motions to dismiss and request for a judgment on the pleadings.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts I and III (Doc. 26) and Defendant's Motion to Dismiss Count II and for Judgment on the Pleadings (Doc. 23) are hereby **DENIED.**

**IT IS FURTHER ORDERED** the Defendants' Motion to Dismiss Count V (Doc. 25) is hereby **GRANTED IN PART AND DENIED IN PART.**

---

[41] *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 86, 716 P.2d 575, 578 (1986).

-18-

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Count IV (Doc. 24) is hereby **DENIED.**  RLI has 21 days from the date of this Order to file a second amended complaint.

**IT IS SO ORDERED**.

Dated this 23rd day of December, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE